UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. S1-4:19-cr-00858-HEA ) |
| JAIME LYNN SLADE, | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Jaime Lynn Slade, represented by defense counsel Sanford J. Boxerman and Sara G. Neill, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's waiver of indictment and voluntary plea of guilty to Count 1 of the Information, the government agrees to move for the dismissal of the pending indictment, in case number 4:19-cr-00858-HEA-JMB, at the time of sentencing. Further, the United States agrees that no further federal criminal prosecution will be brought against the defendant in this District relative to the creation, use, or submission of false documents during her employment at Midwest Cardiovascular, Inc. from 2015 through December 31, 2019, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the defendant may request a sentence below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The Government reserves the right to oppose the request and to recommend a sentence within the guideline range determined by the Court.

## 3. ELEMENTS:

As to Count 1 of the Information, the defendant admits to knowingly and willfully aiding and abetting the making or presenting of false, fictitious, or fraudulent claims in violation of Title 18, United States Code, Sections 287 and 2(a) and admits there is a factual basis for the plea. The defendant fully understands that the elements of the crime of making or presenting a false, fictitious, or fraudulent claim are:

(a) A person or persons made or presented a claim against the United States' Medicare Program;

(b) The claim was false, fictitious, or fraudulent;

(c) The person or persons knew that the claim was false, fictitious, or fraudulent; and

(d) The false, fictitious, or fraudulent matter was material to Medicare.

Defendant is guilty of aiding and abetting the commission of this crime if the Defendant:

(a) knew that the false, fictitious, or fraudulent claims were being made and presented to the United States or were going to be made or presented;

(b) had enough advance knowledge of the extent and character of the claims that she was able to make the relevant choice to walk away from the claims before all elements of the false, fictitious, or fraudulent claims were complete; and

(c) knowingly acted in some way for the purpose of causing, encouraging or aiding the making or presenting of the false, fictitious, or fraudulent claims.

As relevant to this case, a defendant acts knowingly if the defendant:

(a) believed there was a high probability that false claims were being presented; and

(b) took deliberate actions to avoid learning of that fact.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.

    a.    At all relevant times, the defendant was a licensed registered nurse in Missouri, who was employed by Antoine Adem, M.D. ("Dr. Adem"), at Midwest Cardiovascular, Inc.

    b.    At all relevant times, Dr. Adem was a medical doctor licensed in the state of Missouri. Dr. Adem provided services to patients insured by Medicare, Medicaid, and private insurance companies.

    c.    At all relevant times, Midwest Cardiovascular, Inc. was a Missouri corporation. Dr. Adem served as the president of Midwest Cardiovascular from its inception in 2008.

### Relevant Medicare Provisions

    d.    The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program, which is a federal health benefits program for the elderly and disabled. Medicare Part B reimburses health care providers for covered health services that they provide to Medicare beneficiaries in outpatient settings.

    e.    CMS acts through fiscal agents called Medicare Administrative Contractors or

3

"MACs" which are statutory agents for CMS for Medicare Part B. The MACs are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries. Wisconsin Physicians Service Insurance Corporation (WPS) is the Part B MAC for Eastern Missouri and thus processes Dr. Adem's and Midwest Cardiovascular's claims for Medicare reimbursement.

 f. To receive Medicare reimbursement, providers must make appropriate application to the MAC and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules. After successful completion of the application process, the MAC assigns the provider a unique provider number, which is a necessary identifier for billing purposes.

 g. Medicare providers must retain clinical records for the period required by State law or five years from date of discharge if there is no requirement in State law.

### Relevant Missouri Medicaid Provisions

 h. MO HealthNet administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government. Missouri Medicaid reimburses health care providers for covered services rendered to low-income Medicaid recipients.

 i. A Medicaid provider must enter into a written agreement with MO HealthNet to receive reimbursement for medical services to Medicaid recipients and must agree to abide by MO HealthNet's regulations in rendering and billing for those services.

 j. Medicaid providers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services billed to Medicaid, and must furnish or make the records available for inspection or audit by the Missouri Department of Social Services or its representative upon request. Failure to furnish, reveal, or retain adequate documentation for services billed to the Medicaid Program may result in recovery of the payments for those services not adequately documented and may result in sanctions to the provider's participation in

4

the Medicaid Program. This policy continues to apply in the event of the provider's discontinuance as an actively participating Medicaid provider through the change of ownership or any other circumstance.

### Current Procedural Terminology (CPT) Codes

k.  In presenting reimbursement claims to health insurance companies, health care providers use numeric codes, known as "CPT Codes," to describe the service they provide. The CPT codes are contained in the Physicians Current Procedural Terminology manual. The CPT manual is published by the American Medical Association (AMA) and its body of physicians of every specialty, who determine appropriate definitions for the codes. By submitting claims using these CPT codes, providers represent to the insurance companies and their patients that the services described by the codes were in fact provided.

l.  Reimbursement rates for the CPT codes are set through a fee schedule, which establishes the maximum amount that the provider will be paid for a given service, as identified by the CPT code.

m.  CPT code 37241 is the code used to report vascular embolization and occlusion, which is a minimally invasive procedure defined as the therapeutic introduction of various substances into circulation to occlude or block vessels either to arrest or prevent hemorrhaging; to devitalize a structure, tumor or organ by occluding its blood supply; or to reduce blood flow to an arteriovenous malformation.

n.  CPT 36478 is the code used to report endovenous ablation therapy of incompetent veins, which is the use of a laser or high-frequency radio waves to create local heat to close off a varicose or incompetent vein.

### Fraud Scheme Related to Varicose Vein Procedures

o.  Medicare does not pay for the treatment of varicose veins for purely cosmetic purposes. However, Medicare will pay for the treatment of varicose veins when medically

5

necessary. Surgical intervention, such as vascular embolization and occlusion, may be covered when conservative measures such as exercise, periodic leg elevation, weight loss, compressive therapy, and avoidance of prolonged immobility prove unsuccessful.

    p.    The Defendant admits that she, as directed by Dr. Adem, scheduled two vein procedures to be performed on certain patients in one day. The Defendant used an office planner to note that both surgeries were to be performed on the same day. This information was also included in the electronic calendar and schedule that the office maintained. Further, the patient consent forms and all other documents related to the surgeries for these patients show that the two procedures were performed on the same day.

    q.    On the dates of the surgeries, Dr. Adem made hand-written surgery notes that indicated that he had performed the vein procedures on two different dates. The Defendant admits that on the dates of the surgeries, Dr. Adem gave these false notes to her and that she was present in the room and assisting him during the surgeries.

    r.    The Defendant admits that she scanned Dr. Adem's hand-written notes into the patients' permanent electronic medical record (EMR). Because she was present during the surgeries and had Dr. Adem's hand-written notes, the Defendant admits that she could have easily determined that Dr. Adem's surgery notes falsely and fraudulently indicated that the two vein procedures had been performed on two separate days, when in fact the two vein procedures were performed on the same day.

    s.    Except to the extent set forth above, the Defendant was not involved in the billing process at Midwest Cardiovascual, Inc. Nevertheless, the Defendant admits that she was willfully blind in that she deliberately avoided inquiring as to how the surgeries would be billed and under the circumstances should have known there was a high probability that the claims would indicate the patients received the surgeries on two different days, as falsely indicated in Dr. Adem's surgery notes. The Defendant admits that she deliberately closed her eyes to what

would otherwise have been obvious to her and avoided confirming the high probability that the billing staff at Midwest Cardiovascular would rely on Dr. Adem's false and fraudulent surgery notes and bill the two surgeries as occurring on two separate days.

t.   On each of the dates of services listed below, the Defendant admits that she scheduled two vein procedures to be performed on each of the listed patients on a Friday, obtained the consent of the patient on the scheduled Friday, and assisted Dr. Adem in the two vein procedures on the same Friday.

| S.E. | Date of Service 8/28/15 |
|------|-------------------------|
| E.G. | Date of Service 1/16/15 |
| F.J. | Date of Service 9/18/15 |
| D.P. | Date of Service 10/9/15 |
| S.H. | Date of Service 3/10/17 |

u.   The Defendant admits that she aided and abetted Dr. Adem in causing false and fraudulent reimbursement claims, reflecting vein procedures performed on two different days, to be submitted to Medicare. The false information contained in the claims was material to Medicare's decision to pay the claims. As a result of the false information in the claims, Dr. Adem received about $2000 more for each patient than he would have received if he had informed Medicare and the other insurers that the two vein procedures were performed on the same day.

v.   The Defendant admits that from in or about 2015 to in or about 2017, she aided and abetted Dr. Adem in submitting numerous false and fraudulent claims to Medicare and Medicaid. As a result of these fraudulent claims, Medicare paid Dr. Adem and Midwest Cardiovascular $149,199.00, more than they were entitled to receive.

w.   The Defendant admits that on or about December 31, 2015, in the Eastern District of Missouri, she aided and abetted Dr. Adem in making and presenting a reimbursement claim, to an agency of the United States, knowing that such claim was false and fraudulent, that is, the Defendant submitted or caused Midwest Cardiovascular to submit to the Medicare Program a

7

reimbursement claim which falsely and fraudulently stated that Dr. Adem had performed a vascular embolization and occlusion procedure on Patient S.E. on August 31, 2015, when she knew no service had been provided on that date.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count 1 is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 6, as found in U.S.S.G. § 2B1.1(a)(2).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Eight (8) additional levels should be added, pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the loss amount exceeded $95,000, but did not exceed $150,000.

### b. Chapter 3 Adjustments:

**(1) Other Adjustments:** Two (2) additional levels should be added, pursuant to U.S.S.G. § 3B1.3, because the Defendant had special skills and occupied and abused a position of trust as a registered nurse that significantly facilitated the commission and concealment of the offense.

8

**(2) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a). because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Other Adjustment(s)/Disputed Adjustments:** None

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 13.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

   a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   e. **Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

### f. Fines, Restitution and Costs of Incarceration and Supervision:

The parties agree that restitution should not be ordered in this case because restitution in the amount of $149,199, ordered in case number 4:19-cr-00676, United States v. Antoine Adem ("Adem") and case number 4:19-cr-00675, United States v. Midwest Cardiovascular, Inc., has been satisfied by the defendants in those cases.  The Court may impose a fine, costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

Sept. 4, 2020
Date

*Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney

9-8-2020
Date

*Jaime Slade*
JAIME LYNN SLADE
Defendant

9-8-2020
Date

*Sanford Boxerman*
SANFORD J. BOXERMAN
SARA G. NEILL
Attorneys for Defendant

14